We're here today to ask that this court vacate the judgment in the order of the district court that denied Mr. Reece's motion to remand and granted the Bank of New York Mellon's motion to dismiss. We believe the notice of removal in this case was untimely. 28 U.S.C. section 1446B provides only two windows in which to remove an action. The first window is within 30 days from the receipt of the initial complaint upon which federal jurisdiction is apparent. The second window is within 30 days from the receipt of any other paper or order from which it may be first ascertainable that the case is one which can be removed or that it has become removable. Now the Class Action Fairness Act adopted those notice of removal procedures, except for the one year limitation in 1446C1. And I know the court wants to hear about that based on the corresponding order we received. That exception in 1453, that a class action may be removable past the one year period from the case, from when the case was initially filed, is not an absolute right for a defendant to remove a class action. It is merely an opportunity to remove if one of the first two windows open. But the one year, or excuse me, the exception to that one year limitation of 1446C did not amend, change, or alter either of the first two windows that I discussed. Do you agree that here you had actual diversity of all parties, plaintiffs and defendants? Yes. Now with 1453B, it appears that, well you have a $5 million limit here. It appears that that only applies to minimal diversity cases rather than full diversity cases. Do you have a view on that or opinion on that? Your Honor, there's no cases that have interpreted that provision in the situation that we have here. We would agree that since there is complete diversity here, so we really think the case is not decided really under the $5 million amount in controversy under CAFA, because the notice of removal doesn't allege the $5 million amount in controversy was satisfied in this case. Well, but that's my point. Does that $5 million only apply to a situation where there's minimal diversity? You know, where all you have to have is one party that's diverse and then- It only applies to a class action where there's minimal diversity. Okay. Yes. Here I think the court can decide this case by asking itself really one question. Was the initial complaint in the case removable? Mr. Reese filed a complaint for injunctive relief. His house was going to be foreclosed on four days after the complaint was filed and he attained a temporary restraining order. His complaint alleged that the parties and the entities involved in the statutory foreclosure did not have the right to statutorily foreclose on his home. When that case was filed under Eighth Circuit precedent to establish the amount in controversy, you have to look at the value of the right to the plaintiff. And in other district court cases in the Eastern District of Arkansas and in the district court in Minnesota, in a foreclosure action, that is determined by looking at the underlying debt of the mortgage loan or the fair market value of the home. Those numbers didn't change throughout the litigation. But it's not, but the original complaint didn't attach anything to it, did it? The original complaint had no exhibits, Your Honor, no. And it didn't mention any numbers? It didn't mention any numbers except that he was behind on his mortgage payments and he could not. And what do you do about the Henry Willis? It talks about the requirement that the complaint explicitly disclose that the plaintiff is seeking damages in excess of the federal jurisdictional amount. There was no damages sought in this complaint. And the reason for that is this. Under the Statutory Foreclosure Act in Arkansas, if you do not stop a statutory foreclosure sale for your client immediately, you lose every affirmative defense to the foreclosure except for fraud and except for strict compliance with the Statutory Foreclosure Act's provisions. So, Your Honor, in practice, when a client walks into your office and says, I'm going to be statutorily foreclosed on, your only remedy really in Arkansas law is to seek a temporary restraining order. Typically, those complaints do not seek damages. Even if you take the defendant's position that because there was only a temporary restraining order sought in the complaint and somehow that lessened the amount of controversy, there was an order entered by the circuit court once he issued the temporary restraining order on February 25, 2011. And in that order, he said that he doubted the defendants would prevail on the merits. The temporary restraining order would stay in place. And that he would consider a permanent injunction to absolutely stop the statutory foreclosure sale of his home. Well, but let me see. Now, maybe I misunderstood your argument. I thought what you were arguing was that the appellee waited too late, that he should have sought removal within 30 days of that initial pleading. Yes, he should have. He should have. But the problem is, as I see it, is that there's no way a reader in looking at your initial pleading could tell the amount in controversy. There's no reference to the value of the property, the amount owing on the mortgage. And I thought the requirement was that we look at the face of the complaint and that it must explicitly provide information from which a reasonable defendant could draw the conclusion that the requisite amount was in controversy. The reasonable defendant here, Your Honor, is the bank. And that's who is receiving the mortgage payments. They know what is owed. So you would argue it's more of a subjective standard. You look at the particular defendant and what the defendant may know from extrinsic. When there's black letter law, that value that you measure for injunctive relief only is the value of the right to the plaintiff. And, yes, the bank should have known what Mr. Reese owed on the note. And one of the reasons Mr. Reese was in the predicament to begin with is when he sent in his mortgage payments, he would receive the mortgage payments back and say, no, you owe us more, you owe us more. Mr. Reese didn't know what he owed on the mortgage exactly at the time he filed his complaint for temporary restraining order. My only point with respect to the, we believe that you can decide the case on that issue, whether the initial pleading was removable. We believe it was removable. The first window opened, 30 days passed, there was no notice of removal filed. But, Your Honor, if you don't believe the initial pleading was removable, they received an order on February 25, 2011, that said we would permanently enjoin the statutory foreclosure sale of the home. And that order certainly would have made the case removable. That occurred five months after the initial pleading. And by that time, the bank should have done an investigation and known how much Mr. Reese owed on the note or what the value of the home was. And there was no, excuse me, there was no notice of removal within 30 days of the February 25, 2011 order. Once you had a class action, explain to me how you get around the 1453B exclusion. How we get around that? The class action changed the complaint. The class action complaint changed the litigation. And we're not denying that the litigation was the same when the class action complaint was filed. But 1453B only provides the defendant may be able to remove a class action. But it's not an absolute right to remove a class action. 1453 still adopts the procedures in 1446. In those two windows I discussed in 1446B, one of those two windows still has to open. And a 30-day time period must start when one of those two windows open. The first window. I guess I see what you're saying. Your Honor. So you're not relying on the one year because 1453B throws that out. 1453 throws that out in some cases. But you still have to have the ability to remove the case within one of the two windows in 1446 that open. It's when you get the initial pleading. Is it removable? Is the amount of controversy satisfied? Or if the case was not removable from the beginning because the text of the second window states within 30 days from the receipt of another paper from which it may be first ascertained that the case is one which or has become removable. Our position is that the case was removable from the beginning. And the class action complaint was not the pleading from which it may be first ascertained that the case was removable. It doesn't say that the case was removable under CAFA. It says was it removable period. Congress didn't write the statute in that way. So since the case was removable from the beginning or at least from the February 25, 2011 order, that's when the defendants had 30 days to remove the case. Why is it not removable once the class action is sought? Because it was removable from the beginning. Even to remove a class action, it has to be removable from the beginning in the first window or it has to be removable in the second window. The second window doesn't always open for a defendant. It only opens when the first initial pleading was not removable to begin with. That's the text of the statute from which it may be first ascertained that the case is one which or has become removable. If the initial pleading is removable, then it can't be removable later. The question, and perhaps you were going to touch on this, but I think you have an argument that the district court improperly denied the motion to remand. And you argue that the appellee did not sustain its burden of showing by preponderance of the evidence that the jurisdictional threshold is satisfied. Yes, Your Honor. Now, my question is, let's say we agree with that and we say that Judge Miller just didn't do enough, the order was too skimpy or succinct. There was not really a discussion of that requirement and we remanded it. Are you really arguing at this point that this jurisdictional amount is still an issue? What we're arguing at this point, Your Honor, is if you review the notice of removal, the bank did not allege that the $5 million amount in controversy was satisfied. That's not an allegation under notice of removal. They talk about us filing a class action complaint in the size of the class, but typically when you get a notice of removal from a defendant in a class action, they will say the amount of controversy under CAFA is satisfied and here's why, and connect the dots about how $5 million is in controversy. We didn't get that in this notice of removal. So when we filed our motion to remand, we felt like we had to raise that as an issue within 30 days, the notice of removal, or we would lose it. But our argument there is the notice of removal never asserted jurisdiction under CAFA. We think that can be determined. CAFA is not mentioned anywhere in any of the, by the district court or by the parties in any of this, is it? It's not mentioned in the notice of removal. It was mentioned by the bank about 50 days after we started briefing, or excuse me, after the notice of removal when we started briefing whether the court had jurisdiction and whether removal was timely. But it's not mentioned in the notice of removal. It was mentioned too late. The 30-day time period had lapsed. You cannot assert a new basis for jurisdiction after the 30-day, or after the 30-day notice of removal period has ended. Is your client willing to concede at this point that at least the $75,000 threshold is met here? No, because there's only an allegation in the notice of removal that he owed $139,000. Like I said, Mr. Reese got in the predicament because he fell behind on his mortgage payments, and he did not know how much he owed on the loan, even though he asked. And that burden of approving the amount of controversy, either over $75,000 or over $5 million, is still on the defendants. I don't think that they would be able to carry that burden with respect to the $75,000. Based on a single allegation in the notice of removal that he owed $139,000 without a partial payment history, no, Your Honor, we don't concede that. Thank you, Your Honors. Thank you. Mr. Martz. Good morning. Good morning. Good morning. May it please the court, I'm Gary Martz. I'm here on behalf of Bank of New York Mellon. I'm going to stop at that. There's a lot of stuff listed in the style that comes after it, and I can't remember all of it. The court should affirm the district court's ruling, and I take it from Mr. McGay-Hayes' argument that the merits of the district court's ruling as to whether the case should have been dismissed are no longer at issue in light of this court's opinion in Johnson back in August, which affirmed the opinion on which the district court was relying. Since Mr. McGay-Hayes didn't argue that at all, I'm not going to argue it either and stick to the jurisdictional issues. Mr. McGay-Hayes argued that the notice of removal did not state that the jurisdictional minimum under CAFA was met, and I agree that the notice of removal could have been clearer on that point, but I would point the court to paragraph 15 of that notice, which appears at page 3 of the appendix. That paragraph alleges that Reese seeks judgment against trustee for compensatory damages, treble damages, and punitive damages, and this is the key part, payable to the putative class in an unspecified amount that will exceed the minimum for federal diversity jurisdiction. That is a reference to the class minimum under CAFA. The removal is filed, if you look at the removal and the authority and the statutes that are cited in the notice of removal as authority for the removal, it cites to 28 U.S.C. 1332, which contains the CAFA provisions. So while I think it would have been better had the notice of removal stated that more explicitly, more clearly, I think that's sufficient upon which to remove under CAFA the fact that the statement that the jurisdictional minimum is met is hinged entirely upon the fact that damages are sought that are, quote, payable to the putative class. I note, too, that the notice of removal also cites to the class, it also quotes the class definition, which there wouldn't have been any point in that if the removal were just under the regular individual diversity jurisdiction. On the point that Mr. McGehan made, I think that Appellant is being somewhat inconsistent in the arguments that it's making with regard to the $75,000 that Judge Shepard asked about. On the one hand, Appellant is arguing, well, this case was removable from the start. From the filing of that first complaint, this case was removable because this is an individual claim. It met the requirements for diversity jurisdiction. It was removable when he first filed it in 2010. But then on the other hand, they say, well, no, they haven't ever shown that the $75,000 is at stake, and they still won't concede that the $75,000 has been met here. So on the one hand, it's removable because the $75,000 is met, and then on the other hand, the $75,000 hasn't been met. And I think the reason why they have to be inconsistent. When does it, because I didn't go back and look at this, when did it first get alleged or come out that there was a $139,000 note? It's not in their complaint. It's not in your removal stuff. When did that finally show up? It's alleged in the notice of removal. A copy of the mortgage appears in the record. It's at appendix 178, and I believe that was attached to the- To the removal? Not to the notice of removal, but to the papers that were filed on the issue of remand, if I'm not mistaken. The motion to remand. I believe so. But the copy of the mortgage is there. It shows that the- Does that show what's left on the mortgage? It does not, Your Honor. Arguably, it could be $50,000 is all that's left. Well, it shows that the total amount of the mortgage originally was $144,000, and that the mortgage was executed in 2004. So we don't have anything in the record. Reasonable inference is that- Given that it had only been-that he was in arrears on it in the first place and that it had only been in place for six years, at the point at which Mr. Reese filed his initial complaint in state court. The amount that's stated in the notice of removal is $139,000. I think, too, that it's important. All we've gotten from Mr. Reese in this case is an argument. This hasn't been proven. The amount in controversy hasn't been proven. There's never been any serious dispute over what the amount in controversy is. He's never submitted any evidence of his own. He's never said anything other than to say that they haven't proven this. And this is not a case that's been cited in the briefs, and I will submit a 28-J letter on it after today. But there's a case decided by the U.S. Supreme Court a couple of years ago. It's Hertz Court v. Friend. It's a case that deals with removal jurisdiction. And that case says, and this is a quote from the case, when challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof. There's never been a challenge here of the allegation of the amount in controversy. All there's been is, well, we need more. But that's not a real challenge. And if we're looking at it under the preponderance of the evidence standard, the only evidence in the record as to the amount of the claim that Mr. Reese has made is that mortgage, which is in the record. There's nothing else. And in terms of the $5 million under CAFA, Mr. Reese alleges in his class action complaint that his claim is typical, and he alleges that there are thousands of members of this class. Well, if there are thousands of members of this class, it doesn't take a significant amount per member to get to $5 million. And the amount, if we look at what's alleged in the First Amendment complaint, they seek actual damages under the Arkansas Deceptive Trade Practice Act on behalf of the class. They seek an award of attorney's fees. They seek enhanced penalties under the Arkansas Deceptive Trade Practices Act. They seek disgorgements of amounts by which the defendant has been unjustly enriched. They seek to void all nonjudicial foreclosures in the state of Arkansas, which they number in the thousands. And they also seek actual damages, treble damages, and punitive damages for slander of title. So it doesn't take a big stretch for the court to conclude that with thousands of people posing those same claims that we're going to get to $5 million. And the standard is we don't have to prove that with certainty. The standard is that a fact finder might legally conclude that the damages exceed $5 million. And I think with what the court has in front of it. My suggestion that I ask Mr. Gahee is that you don't have to show $5 million because that only applies when you have minimal diversity. And here you have total diversity. Do you have a position on that? I'm not prepared for that point. My understanding of CAFA is that it puts in place a standard where you can remove if you have less than total diversity. But I think that if you're removing under CAFA, you have to show the $5 million amount in controversy. I don't think that applies only when there's minimal diversity. I think minimal diversity is the minimum standard of diversity under CAFA. But I'm not adequately prepared on that point, and I could be wrong. So is it your client's position that there's federal jurisdiction either way, either under CAFA or under normal diversity? What was Appley trying to do at removal? Because CAFA is not prominently mentioned here. Yes, Your Honor. I think that we were trying to remove- What was the intent? We were trying to remove under three bases. And the first is regular diversity. And to be frank with the court, I don't think that we could remove under that. I think that the one-year deadline applies. And I think if you look at the standard for determining whether this case was commenced more than a year before the notice of removal, I think that there's no way to get around that one year with regard to regular diversity jurisdiction on Mr. Reese's individual claims. We were also trying to remove under CAFA. And as I stated, I think that could have been stated more clearly in the notice of removal. But I think that there's enough there where it says that the class claims exceed the amount for federal diversity jurisdiction. That's sufficient under CAFA. And then there was a third ground that, frankly, I think is a little bit marginal, federal question jurisdiction. But I think the issue here today is CAFA. And I want to, in my remaining time if I can, respond on the issue of timeliness. When Mr. Reese filed his initial complaint in state court, he sought nothing more than a temporary restraining order. It asserted a theory that's totally different from the one that was ultimately asserted in the class action complaint. It asserted that the trustee could not foreclose because of a lack of privity. And it sought a temporary restraining order to stop foreclosure, quote, until all proper parties are joined and are in privity of contract with Reese. There was no monetary relief requested in any form. And it did not seek to enjoin foreclosure permanently. It just seeked, all it sought was for Mr. Reese to get a day in court to make sure that whoever was foreclosing against him was in privity of contract with him. The order that Mr. McGehee referred to that was entered on February 25, 2011, did nothing more than just keep the temporary restraining order in place. It also ordered Mr. Reese to continue making payments, or I guess maybe at that point to start making payments on his mortgage into the registry of the court. There was nothing in that order that gave an explicit disclosure that a basis for federal jurisdiction may be asserted. The first amended complaint, which was filed in January of 2012, completely changed the case. Immediately before that complaint was filed, one of the plaintiffs in the case, Ms. Woods, non-suited her claims. So all of a sudden, we've lost a plaintiff. And then we get a new amended complaint that has, for the first time, a theory that my client was violating the Statutory Foreclosure Act. It added class claims for the first time. It added claims for money damages for the first time. It added claims for punitive damages for the first time. It added claims for attorney's fees for the first time. That was the first time that it was shown that this was a case that was removable. And at that point, that triggered the 30-day deadline under 28 U.S.C. 1446. And the notice of removal was filed within 30 days of the filing of the first amended complaint. That makes it timely. But I would also submit to the court that even if the court were to find that the initial complaint were removable under regular diversity jurisdiction, because the amount in controversy was $75,000 and the parties were diverse, that it would frustrate the intent of CAFA to interpret Section 1446 as applying in a case like this one, where there was no ground asserted in the initial complaint under which the defendant could remove under CAFA. The purpose of CAFA, and the court discussed this in a case that's cited in the briefs, Bell v. Hershey, that was to stop abuse of the class action procedure. What the phrase that's used in Bell is abuses of the class action device. If you look at the Senate report on CAFA, one of the things that the Senate and the Congress were addressing was situations where they used the word gaming the system, where allegations that would make a complaint removable are held out of the complaint until the one-year deadline has expired. And they've eliminated the one-year deadline to eliminate that possibility. And I think that in this case, if the court holds that when this case was not a class action beforehand, that the first time it became a class action, the first time that the case was put out there in a form that made it removable under CAFA, it couldn't be removed because there was an argument that the initial complaint was removable, it frustrates that intent because it encourages a plaintiff to file an initial complaint that's innocuous, looks a certain way, doesn't have these class claims. And then later, after the initial period has expired, to amend and add class claims. And I think that's exactly what CAFA was trying to eliminate. Let me ask you about your costs and not putting an affidavit in. How can we affirm that when you don't have the basis for the cost? Well, there is a basis for the cost. There is a bill of cost form that is filled out. It's not verified. I know that, but the rules say that you have to have an affidavit. Affidavit or let's say declaration, but something like that that says that it's all necessary and reasonable and so forth. And all it would have taken was just a signature. I can't speak to why that didn't happen, Your Honor. You think that's mandatory or is it optional? I think it's mandatory. I think it says that a bill of cost has to be submitted. I would submit to you, though, that it was submitted as part of a motion that was signed by counsel subject to Rule 11, and I think that ought to suffice. So I do think that that is sufficient. Okay. Thank you. Thank you. I'll give you one minute. Thank you, Your Honor. I'll give you a whole minute. Thank you. Very quickly, first, we're not conceding that the motion to dismiss was correctly decided. That issue has not been determined by the Arkansas Supreme Court. Subsequent to our briefing, of course, the court issued its opinion in JPMorgan Chase v. Johnson, so it's out there. I do want to address this issue about gaming the system, and class action attorneys are gaming the system by filing a mundane complaint at the beginning of the case. The complaint at the beginning of the case was filed four days before the statutory foreclosure sale was to be had. If Mr. Reese doesn't stop that statutory foreclosure sale, every affirmative defense that he has to that statutory foreclosure sale goes away under the Statutory Foreclosure Act, except for fraud and strict compliance. After that complaint was filed, the U.S. Bankruptcy Court, in Ray Johnson, issued an opinion that said national banks had to register in Arkansas before they could statutorily foreclose, and that led to several lawsuits in Arkansas being filed challenging statutory foreclosure acts by national banks that did not register to do business in Arkansas. It's not gaming the system when you're trying to stop a statutory foreclosure sale of your client's home. And that's all I have, unless you have other questions. Thank you very much. Thank you. Well, we appreciate your arguments, and we will be back to you as soon as we can. Thank you.